```
        UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF WEST VIRGINIA

                  CHARLESTON
```

**ELI W. FREELAND,**

    **Plaintiff,**

**v.**                                       **Case No. 2:11-cv-00443**

**WARDEN DAVID BALLARD,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

On June 24, 2011, the plaintiff, an inmate at Mount Olive Correctional Complex ("MOCC"), filed a Complaint, alleging that his constitutional rights have been violated in connection with the "Quality of Life" program in the Administrative Segregation unit at MOCC. This matter is assigned to the Honorable Joseph R. Goodwin, Chief United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915A, the court screens each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a

defendant who is immune from such relief. In Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.[1]

### PLAINTIFF'S ALLEGATIONS

The Complaint states as follows [spelling corrected]:

    On February 17, 2011, I was dropped from level 3 to level 1 within the Quality of Life program. The Quality of Life (Q.O.L.) program is Administrative Segregation within West Virginia Division of Corrections. This "program" is a 16-month incentive program that is made up with 5 levels. With each level, we get more privileges. I was stripped of my level 3 privileges and reduced to level 1 status without any disciplinary rule violation writeup, without any meeting with staff of any kind. I never received any type of warning that I was participating in negative behavior on this program. Upon me asking why I had been dropped, I was told it was because of some negative entries within my log book. I then asked what I did wrong and asked to see my log book. This request was denied with me being dropped down to level 1 within the Q.O.L. program. I will now have to spend additional <u>16 months</u> (at the least) on "<u>lockdown</u>," removed from the general population! My privileges were also reduced in such ways as: loss of visits, loss of job opportunities, loss of my personal TV, restrictions on my spending limit for commissary were reduced as well!

    I claim that my "due process" rights protected by the 14th Amendment were violated. I was sanctioned and forced to forfeit property without ever knowing what I did wrong. Adequate notice of what is and is not prohibited is part of due process. Freedom from restraint is also included in the due process as well.

---

[1] Because service of process has not occurred, a motion to dismiss has not been filed in this case. Such a motion, filed pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*, asserts that the complaint fails "to state a claim upon which relief can be granted," which is the same standard set forth in 28 U.S.C. § 1915A.

> I was denied them all.
>
> I also claim that the Q.O.L. program/Administrative Segregation in the West Virginia Division of Corrections is also in violation of my constitutional rights; where I am denied meaningful and periodic reviews, rehabilitation, education, vocational programing and recreation. This Q.O.L. program is being used as a substitute for punishment. We are placed on the same security level as punitive inmates. We are forced to live in the same housing units with punitive inmates, and we are also forced to wear the same uniforms as punitive inmates. Whenever we exit our cells we are placed in handcuffs and leg irons. However, these handcuffs and leg irons are used as a privilege system. Once you gain level 4 within the Q.O.L. program you do not have to be placed in restraints. This program is using handcuffs and leg irons as a punishment and reward system, with all this said even other extreme restraints are placed on my daily life involving my store call, my medical care and clothing.
>
> Another claim of mine is that I'm being forced to pay $3.00 a month for cable. But I am not given equal opportunity to gain employment to pay this bill. But the rest of the general population has to pay this same fee and are given an opportunity to gain employment. And us inmates on Q.O.L. program must have a TV with cable to complete the program. A memo was issued on June 13, 2011, stating, "Those who do not wish to pay may have their TV sent home." If Q.O.L. inmates do this, we will be given another 16 months on lockdown. In that same memo, it says, if we are indigent, debt will build on our account until we pay in full. This is a violation of our freedom from restraints and equal protection rights.

(Complaint, ECF No. 1, at 8.) The plaintiff seeks the following relief: (1) placement in the general population; (2) $100/day for living in segregation; (3) cessation of the requirement to pay for cable; (4) stop the Quality of Life program; (5) train prison staff on the Quality of Life program; (6) due process rights when prison staff demote inmates in the Quality of Life program; and (7)

meaningful review of inmates moving through Q.O.L. levels. Id. at 11.

## **ANALYSIS**

In the prison context, a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Following the reasoning of the Supreme Court in Sandin, the undersigned finds no liberty violation implicated in the decisions of prison staff which caused the plaintiff to be placed at a particular level of the Quality of Life program, as it is not atypical for inmates to be placed in administrative segregation for any number of reasons. See Hewitt v. Helms, 459 U.S. 460, 468 (1983); Beverati v. Smith, 120 F.3d 500, 502-04 (4th Cir. 1997) ("confinement to administrative segregation does not implicate a liberty interest"). The plaintiff has no right to notice and an opportunity to be heard prior to his assignment to a particular level of the Q.O.L. program, as a prisoner has no liberty interest in being housed in any particular prison facility. See Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983); Meachum v. Fano, 427 U.S. 215 (1976).

If the plaintiff is complaining that the conditions of confinement on the Quality of Life program are themselves a violation of due process, the undersigned is not persuaded. The Supreme Court ruled in Wilkinson v. Austin, 545 U.S. 209 (2005),

that the "totality of circumstances" to which inmates are subjected in the Ohio "super maximum" prison (prohibition of almost all human contact including cell-to-cell conversation, 24 hour a day lighting, one hour exercise in a small indoor room, indefinite placement, and disqualification for parole consideration) are atypical and significant hardships which creates a liberty interest and its attendant due process. The plaintiff has not alleged that he is subject to such arduous conditions.

In Farmer v. Brennan, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" Id., at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." Id., at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id., at 837.

The holdings in Sandin, Beverati, Wilkinson and Farmer establish that the plaintiff has failed to state a claim upon which relief can be granted. The plaintiff has failed to show that he has suffered "a serious deprivation of a basic human need [and] deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Moreover, the plaintiff has failed to allege that he has suffered any serious or significant injury resulting from his Quality of Life assignment. Strickler requires a showing of significant injury. 989 F.2d at 1381.

The plaintiff appears to be making a claim that he is being denied equal protection of the law with respect to the billing for cable TV. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). To show that his equal protection rights were violated, the plaintiff must demonstrate that (1) he was treated differently than similarly situated inmates. The plaintiff's complaint indicates that all the inmates at MOCC are required to pay for

7

cable.  If the plaintiff is complaining that he is treated differently because he does not have prison employment, his claim fails because there is no right to prison employment.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to state a claim upon which relief can be granted.

It is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** with prejudice the plaintiff's Complaint under 28 U.S.C. § 1915A, and **DENY** his Application to Proceed without Prepayment of Fees and Costs (ECF No. 4).

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall

constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

August 18, 2011
Date

*/s/ Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge